EUGENIA WELBORNE v. GULF, COLORADO & SANTA FE
RAILWAY COMPANY.

Decided April 8, 1904.

**1.—Railroads—Obstructing Crossing—Negligence—Question for Jury.**

Evidence considered and held to raise the issues of negligence on the part of defendant's employes in stopping its engine upon a crossing and allowing it to remain there an unnecessary length of time and of contribu-. tory negligence on the part of plaintiff in going upon the crossing under the circumstances, both of which issues should have been submitted to the jury.

**2.—Same—Proximate Cause.**

The negligent act of defendant in stopping its engine on a crossing and allowing it to remain there an unnecessary length of time held to be the proximate cause of the injury in the case of one whose horse took fright at the noise made by the engine, a usual and necessary incident to its operation, where the evidence reasonably showed that the horse would not have been frightened at the noise if the engine had been stopped at a proper distance from the crossing.

Appeal from the District Court of Burleson. Tried below before Hon. Ed. R. Sinks.

*John W. Parker* and *W. C. Halbert,* for appellant.

*J. W. Terry* and *A. H. Culwell,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—This is a suit by appellant against the appellee to recover damages for injuries to her person alleged to have been caused by the negligence of appellee's employes. The petition alleges that appellant was injured by being thrown from her buggy, the horse which she was driving having been frightened and caused to run away by an engine which the employes of appellee had negligently stopped upon the crossing of a public street in the town of Somerville along which plaintiff was driving, and negligently permitting to remain upon said crossing for an unreasonable length of time. The evidence adduced by plaintiff was in substance as follows:

The railroad of appellee runs through the town of Somerville from north to south. Plaintiff at the time she was injured lived on the west side of the railroad in said town, but took her meals at a boarding house on the east of the railroad. There were only two streets in the town which crossed the railroad. One of these crossings was just south of the depot and the other a block further south. The street which crossed at the depot was the principal street of the town and the crossing at that place was generally used by the citizens, most of whom lived on the east of the railroad, while the business portion of the town was on the west side. On the evening of August 15, 1901, between 6 and 7 o'clock, while plaintiff was at supper at her boariodng house a freight train on appellee's road came in from the south and stopped on the crossing near the depot. After plaintiff had finished her supper, which was fifteen or twenty minutes after the train came in, she and a friend

got into her buggy to drive to her home. The circumstances under which the accident occurred are thus detailed by plaintiff: "We got in the buggy, and at that time we had the horse's head turned as we had driven up to the house. We turned and looked at the lower crossing and that was also blocked; the train was long enough to extend from where the engine stood back beyond the other crossing, and the train had not been parted at that crossing.. Then we drove up to the crossing at the depot. When we saw the lower crossing was also blocked, we were just the width of the street from the crossing at the depot. As we drove up to the crossing at the depot I looked on the engines and saw nobody on them. I looked right straight at the engines, and we reached the conclusion that as there was no one on them that they were stopped right there and were going to be still, and we would go on. We drove then up on in front of the engines, and as we got up on top of the tracks I saw that I would have to turn right back by the engines to get to a bridge just over the crossing, and I saw my horse looked like he was a little excited, and I stopped him plumb still, right in front of the engine on top of the tracks. I stopped him perfectly still. Then when I went to proceed I had to pull him back by the engines, and I pulled him back by the engines, and at that time I heard some fuss with the air pumps, and then the horse shied. I had had the horse under perfect control when I stopped him just before this. It was when the fuss started on the engine that he did the shying, and as he shied off from the engine the hind wheel of my buggy struck the railing on the bridge, and then he started to run. The horse had manifested some uneasiness just as I got where I had to turn round the engines, but I stopped him and had him under perfect control, and could have still controlled him if it had not been for the fuss on the engine that scared him. It was then that I lost control. There was a space of fifteen or twenty feet in front of the cow-catcher in which I could drive. The good part of the crossing was taken up by the front part of the engine, as I have stated, but I could use the other part of the crossing, and my buggy went over the crossing all right, but I had to pull my horse back in order to reach the bridge that was over the ditch right opposite the crossing, as the engine had too much of the crossing taken up for me to go straight across to the bride. That was the reason I pulled my horse back towards the engines; there was no other way for me to have driven him.. After I got my horse up on the track, I did not have room to turn around and go back the way I had come, but after I got there I had to go on. I had not observed any noise until I reined my horse back by the engine. I was keeping a lookout and was right at the engines, and I think I would have heard any noise on the engine if it had been going on when I went up on the track. Everything seemed to be still and no one on the engines. I think the noise started just as I went to rein the horse back by the engine, after I had stopped him. I did not know that noise was likely to be made, as there was no one on the engine. The engineer and

fireman were eating supper at the Harvey House. When the horse ran
I was thrown out about fifty feet from the crossing as the horse turned.
I sustained a hip injury by the fall that I have not gotten over. From
the time the train was stopped until I undertook to drive across, about
fifteen or twenty minutes had elapsed."

Plaintiff was an experienced driver and had been using the horse she
was driving at the time of the accident for five years as her buggy
horse. She testified that the horse was easy to control and that she
had theretofore been always able to control him. He was about twelve
years old and perfectly accustomed to engines and cars and had never
previously taken fright at a train, although she had driven him just as
close to cars and engines on former occasions. It was shown that
this horse had run away on two previous occasions, once in 1894 and
again about three years before the time of the accident in question, but
it was also shown that on both these occasions when he started to run
no one had hold of the lines or any control of any kind over him.
Several witnesses testified that he was a safe and gentle horse, but that
he would not stand without being tied or held, and whenever he found
he was loose he would run. The evidence is conflicting upon the issue of
whether the engine was stopped on the crossing as claimed by plaintiff.
The evidence shows that the noise made by the engine was very slight,
and was the usual and customary noise made by the air pump which
supplied the air for the brakes. This air pump was worked automatically
by steam from the engine and the occasional noise made by it was neces-
sarily incident to the proper operation of the train. Upon this evidence
the trial court instructed the jury to find a verdict for the defendant,
and upon the return of such verdict judgment was rendered in accord-
ance therewith.

We think the evidence clearly raises the issue of negligence on the
part of appellee's employes in stopping the engine upon the crossing
and allowing it to remain there an unnecessary and unreasonable length
of time, and it can not be said as a matter of law that plaintiff was
guilty of contributory negligence in going upon the crossing under the
circumstances stated in her testimony. Both of these issues were ques-
tions for the jury and should have been submitted to them under proper
instructions. Missouri K. & T. Ry. Co. v. Jones, 13 Texas Civ. App.,
378; Sherman S. & S. Ry. Co. v. Bridges, 16 Texas Civ. App., 64;
Galveston H. & S. A. Ry. Co. v. Simon, 54 S. W. Rep., 309.

From the foregoing conclusions of law it follows that the trial court
erred in instructing the jury to return a verdict for the defendant un-
less, as contended by appellee, the undisputed evidence shows that the
alleged negligence of its employes in stopping the engine upon the cross-
ing was not the proximate cause of plaintiff's injury.

It is earnestly insisted that the statement of plaintiff that her horse
did not take fright at the engine but at the noise made by the engine
eliminated the question of negligence arising from the position of the

engine on the crossing, and since the undisputed evidence shows that the noise which frightened the horse was but a usual and necessary incident to the operation of the engine, the evidence fails to show that plaintiff's injuries were proximately caused by any negligence on the part of appellee's employes. This contention can only be sustained upon the theory that the noise made by the engine would have frightened plaintiff's horse and caused her injury if the engine had not been upon the crossing, but had stopped and remained a proper distance from it, and this theory finds no support in the evidence. On the contrary, the reasonable conclusion to be drawn from the evidence is that the proximity of the engine to the horse when it made the noise was the cause of his fright, and that if the same noise had been made by the engine at a proper distance from the crossing the horse would have paid no attention to it. The evidence shows that this horse had been often driven about trains and near engines and had never before shown any fear of them. The fair inference from the evidence is that the horse must often before have heard the noise which frightened him on this occasion, and the reason that it had never frightened him before was that it had never been made by an engine so close to him We do not understand from the evidence that the noise caused the horse to run. It made him shy away from the engine and caused the buggy to strike against a railing near the crossing and the noise of this collision caused him to run, and it is not improbable that had there been more room on the crossing the plaintiff could have controlled him after he had shied from the noise of the engine and the runaway would not have occurred. But be this as it may, we think the jury might have found from the evidence that the presence of the engine upon the crossing was the proximate cause of plaintiff's injury, and the issues of negligence on the part of appellee's employes and of contributory negligence on the part of plaintiff should under the evidence adduced by plaintiff have been submitted to the jury. The judgment of the court below is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

## ON MOTION FOR REHEARING AND TO CERTIFY TO THE SUPREME COURT.

PLEASANTS, ASSOCIATE JUSTICE.—Counsel for appellee urge in a motion for rehearing filed herein that this court erred in holding that the evidence in the case was sufficient to raise the issue of negligence on the part of appellee which proximately caused the injuries complained of by appellant, and by separate motion requested us to certify the question to the Supreme Court for decision.

The motion for rehearing reiterates the contention made in appellee's brief that as the undisputed evidence shows that plaintiff's horse took fright at the noise made by the engine and not at the engine, it follows that the stopping of the engine upon the crossing, if negligence, was not the proximate cause of appellant's injuries.

Our high respect for the learning and ability of counsel who present this argument induces us to add the following to what was said in the main opinion. In determining the question presented, the usual and necessary noise made by a locomotive engine must be considered as much a part of the engine as the smoke or steam which it emits or any of its physical parts. It was not negligence on the part of appellee's employes to allow the engine to make the noise which frightened appellant's horse, because such noise was usual and necessary in the proper operation of the train, and yet they might be negligent in stopping an engine with such accompanying noise upon a railway crossing and thereby frightening the team of a person using the crossing although such team was frightened by the noise made by the engine and not by the appearance of the engine. Let us suppose that appellant's horse had been frightened at the smoke or the steam which must necessarily be emitted by an engine when ready for operation. In such case it certainly could not be contended that the fright of the horse was not caused by the engine, and we can see no possible distinction between the case stated and the case made by this record. The vice in appellee's argument consists in the attempt to divorce the noise incident to the operation of the engine from the engine itself, when under the circumstances shown by the evidence they are inseparable.

We have no doubt as to the soundness of our conclusions upon this issue and must therefore decline to certify the question to the Supreme Court. It would, in view of the earnestness with which counsel urge their motions, gratify this court to have the Supreme Court pass upon the question, but in the absence of any doubt in our minds we are not authorized under the statute to certify the question to that court for decision.

The motions for rehearing and to certify are both overruled.

*Overruled.*